# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**In re the Chapter 13 proceedings of**
**VALERIE A. RUHL,**
        Appellant-Plaintiff,

   v.                                                                Case No. 08C0371

**HSBC MORTGAGE SERVICES, INC.,**
        Appellee-Defendant.

---

**In re the Chapter 13 proceedings of**
**LYSBETH A. CASE,**
        Appellant-Plaintiff,

   v.                                                                Case No. 08C0372

**WELLS FARGO BANK, N.A.,**
        Appellee-Defendant.

---

**In re the Chapter 13 proceedings of**
**SHANEDRA E. JOHNSON,**
        Appellant-Plaintiff,

   v.                                                                Case No. 08C0373

**U.S. BANK NATIONAL ASSOCIATION,**
        Appellee-Defendant.

---

**In re the Chapter 13 proceedings of**
**JOHN F. HERRERA,**
        Appellant-Plaintiff,

   v.                                                                Case No. 08C0374

**JPMORGAN CHASE BANK, N.A.,**
        Appellee-Defendant.

---

**In re the Chapter 13 proceedings of
OLIVER L. NEWSOM and
CLAUDIA M. NEWSOM,**
        **Appellants-Plaintiffs,**

    **v.**                                    **Case No. 08C0378**

**BANK OF AMERICA CORPORATION,**
        **Appellee-Defendant,**
_____

**In re the Chapter 13 proceedings of
JEROME E. OVEN and
ANNE E. OVEN,**
        **Appellants-Plaintiffs,**

    **v.**                                    **Case No. 08C0379**

**UNIVERSAL SAVINGS BANK,**
        **Appellant-Defendant.**
_____

**In re the Chapter 13 proceedings of
JAMES B. JENDUSA and
KATHLEEN F. JENDUSA,**
        **Appellants-Plaintiffs,**

    **v.**                                    **Case No. 08C0382**

**NORTH AMERICAN SAVINGS BANK, F.S.B.,**
        **Appellee-Defendant.**
_____

## **DECISION AND ORDER**

The above-captioned actions are bankruptcy appeals filed by the plaintiff-debtors (on behalf of their estates) in adversary proceedings arising out of the debtors' Chapter 13 cases. The defendants are lenders who held mortgages on the debtors' homes. The cases involve common issues of law and fact, and therefore the proceedings have been

consolidated. On October 31, 2006, the bankruptcy court granted the lenders' motions to dismiss the adversary proceedings as procedurally deficient, but Judge Stadtmueller of this court reversed that order. On remand, the bankruptcy court again granted the lenders' motions to dismiss, this time on the ground that the adversary proceedings were barred by the preclusive effect of the orders confirming the debtors' Chapter 13 plans. The debtors again appealed, and the appeals were randomly assigned to me. For the reasons stated below, the orders of the bankruptcy court are affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of each of the underlying bankruptcy cases are similar, but there are slight differences. For convenience, I will focus on the facts of the lead case, involving Valerie Ruhl and HSBC Mortgage Services, Inc. ("HSBC"), and note any differences between the lead case and the other consolidated appeals where appropriate.

On August 26, 2002, Valerie Ruhl filed for bankruptcy under Chapter 13 and, on September 10, 2002, filed a proposed Chapter 13 plan. The plan proposed to cure a default on her mortgage with HSBC. Ruhl stated in her plan that the amount of the default (i.e., the "mortgage arrears") was $13,782, and that she intended to cure the default by paying to HSBC the full amount of the default plus 9.5% interest over the life of the plan. On November 12, 2002, the bankruptcy court entered an order confirming this plan, finding that the plan complied with all applicable provisions of the bankruptcy code.

On November 18, 2002 – six days after the plan was confirmed – HSBC filed a proof of claim for the mortgage arrears listed in the plan and served a copy on Ruhl's counsel. The proof of claim stated that the mortgage arrears totaled $10,058.10 and claimed 6.25% interest on the arrears, for a total claim of $13,201.50. Thus, although Ruhl proposed to

3

pay 9.5% interest on the arrears, HSBC requested only 6.25%. This difference in interest rate accounts for why HSBC claimed $580.50 less than Ruhl offered to pay. On May 30, 2003, the Chapter 13 trustee served a notice on all interested parties (including Ruhl) stating that unless an objection was filed within twenty-five days, the trustee would pay HSBC's claim in full. Ruhl did not file an objection. Several years then went by, during which time Ruhl made payments in accordance with her plan, including the payments made to cure the default with HSBC.[1]

On January 13, 2006 – more than three years after her plan was confirmed and HSBC filed its proof of claim – Ruhl commenced an adversary proceeding on behalf of her estate and all similarly situated Chapter 13 estates attacking HSBC's proof of claim.[2] In her adversary complaint, Ruhl alleged that she was not required to pay the 6.25% interest (which Ruhl deems "interest on interest") to HSBC in order to cure her default, and that therefore HSBC was required to disgorge the interest that it collected during the life of the plan and return it to Ruhl's bankruptcy estate. The legal theory behind these allegations is that a specific provision of the bankruptcy code, 11 U.S.C. § 1322(e), states that the amount "necessary" to cure a default pursuant to a Chapter 13 plan "shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." In Ruhl's case, this meant that unless Ruhl's loan agreement with HSBC required that she pay

---

[1] Because Ruhl got behind in her Chapter 13 payments, the plan was amended once in 2004 to reflect an increase in the amount in default.

[2] Ruhl's adversary complaint was essentially an objection to HSBC's claim. But because Ruhl's objection included a request that HSBC disgorge the interest it had already received, Ruhl was required to file her objection in the form of an adversary complaint. See Fed. R. Bankr. P. 3007 & 7001.

4

6.25% interest on mortgage arrears in order to cure her default, she did not have to do so. In her adversary complaint, Ruhl alleged that the loan agreement did not, in fact, require that she pay such interest to cure the default, and thus she contends that she was never required to pay the 6.25% interest that HSBC was receiving under the plan. Ruhl therefore demanded that HSBC disgorge the interest that it had collected.

It is important to note the timing of Ruhl's adversary complaint. Recall that it was Ruhl herself who proposed to pay interest on her mortgage arrears to HSBC in order to cure the default. Before filing Ruhl's plan, Ruhl's counsel could have read § 1322(e) and the loan documents and determined that HSBC was not entitled to the disputed interest. He could have then filed a plan that did not propose to pay such interest. However, Ruhl proposed to make the very interest payments that she now wants disgorged. Moreover, even if there were some explanation for Ruhl's proposing to make the now-disputed payments in the first place, Ruhl does not explain why she did not object to HSBC's proof of claim within the twenty-five-day objection period set by the trustee. When HSBC filed its proof of claim, it attached the underlying loan documents, and thus when Ruhl's counsel received the proof of claim, he had everything he needed to determine whether to object to the claim pursuant to § 1322(e). Yet Ruhl did not object within the twenty-five days and, for some reason, waited a few more years before deciding to object. The only explanation Ruhl has offered for this delay is that her counsel made a mistake and did not realize it until three years later.

This factual and procedural background applies to all of the consolidated appeals. In each case, the debtor (represented by the same lawyer as Ruhl) filed a Chapter 13 plan that proposed to pay interest on mortgage arrears in order to cure the debtor's default.

The bankruptcy court confirmed each plan, and shortly after confirmation, each lender filed a proof of claim that included interest on mortgage arrears. No debtor objected to the claim within the time set by the trustee, and each lender began receiving payments in accordance with the plan. Then, years later (between 2 1/4 and 4 1/3 years later, depending on the case[3]) the debtors decided to file adversary proceedings objecting to the lenders' claims because they included the interest payments that the debtors themselves proposed. Each adversary complaint sought disgorgement, and each was filed as a proposed class action on behalf of all similarly situated Chapter 13 estates. In each case, the debtor offers no reason (other than his or her own mistake) for proposing to pay the disputed interest in the first place or not objecting until years after the plan was confirmed and the lender filed its proof of claim.

After the debtors commenced adversary proceedings, each lender moved to dismiss. The bankruptcy court consolidated all of the adversary proceedings for purposes of ruling on the motions to dismiss, and Judge Shapiro granted the motions on the ground that the adversary proceedings were "procedurally deficient." See Case v. Well Fargo Bank, N.A., 359 B.R. 709, 711-14 (Bankr. E.D. Wis. 2006). The court concluded that the adversary proceedings were deficient because the debtors did not seek reconsideration

---

[3]The specific time lapses between the dates of each order of confirmation and the commencement of each adversary proceeding are as follows:

| Case | 4 1/3 years |
| Johnson | 3 1/2 years |
| Herrera | 2 3/4 years |
| Oven | 2 1/4 years |
| Newsom | 2 5/6 years |
| Jendusa | 2 2/3 years |
| Ruhl | 3 1/3 years |

6

of the lenders' claims before filing adversary proceedings. The court reasoned that because the lenders filed proofs of claim to which the debtors did not object within the time prescribed by the trustee, the claims were deemed allowed by operation of the bankruptcy code. See 11 U.S.C. § 502(a). Therefore, held the court, the debtors had to seek reconsideration of such allowed claims before they could file adversary proceedings. Because the debtors did not move for reconsideration, the adversary proceedings had to be dismissed.

The debtors appealed the dismissal of their adversary proceedings, and Judge Stadtmueller of this court reversed, concluding that the debtors were not required to seek reconsideration before filing adversary proceedings. See In re Chapter 13 Proceedings of Herrera, 369 B.R. 395 (E.D. Wis. 2007). However, Judge Stadtmueller left open the possibility that other principles of law, such as judicial estoppel and law of the case, might provide adequate grounds for dismissing the complaints. Rather than address those grounds for the first time on appeal, Judge Stadtmueller remanded the cases to the bankruptcy court so that Judge Shapiro could address them.

On remand, the bankruptcy court first addressed whether the debtors' claims had become moot. See Case v. Wells Fargo Bank, NA, 394 B.R. 469, 473 (Bankr. E.D. Wis. 2008). Mootness became an issue because while the adversary proceedings were pending, all of the debtors completed making the payments required by their plans, and each received a discharge. Likewise, the trustee of each plan completed making payments to the creditors and had been discharged. The bankruptcy court then closed the cases, but a few days later, someone reminded the bankruptcy court about these pending adversary proceedings, and it reopened the cases. However, other than resolving these

7

adversary proceedings, there was nothing left to be done in any of the underlying bankruptcy cases. Nonetheless, the bankruptcy court determined that the adversary proceedings were not moot because they were brought on behalf of the Chapter 13 estates. If the debtors prevailed, their estates would receive the disgorged funds from the lenders. At that point, the trustee could distribute the proceeds to the other creditors as additional dividends.

Although the bankruptcy court found that the case was not moot and rejected several other of the lenders' defenses, it again granted the lenders' motions to dismiss. This time, the court applied 11 U.S.C. § 1327(a) – which provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor" – and held that the orders confirming the debtors' plans barred the subsequent adversary proceedings. The court reasoned that § 1327(a) stands for the principle that a debtor cannot challenge the provisions of a Chapter 13 plan after the plan has been confirmed because such a challenge would disrupt the presumption of finality created by the confirmation order. In Judge Shapiro's words:

> Permitting a challenge to a plan after confirmation invites mischief. For example, a debtor seeking to avoid a potential objection to confirmation would have the ability to put a provision into a plan to satisfy that creditor and then, following confirmation, challenge the debtor's own provision. That would not only undermine the concept of finality in bankruptcy proceedings, it would also undermine the integrity of the entire judicial process.

Case, 394 B.R. at 476. These appeals ensued.

## II. STANDARD OF REVIEW

I review the bankruptcy court's order granting a motion to dismiss an adversary complaint de novo. Zedan v. Habash, 529 F.3d 398, 403 (7th Cir. 2008). I may affirm on any basis supported by the record. In re Scarlata, 979 F.2d 521, 526 n.5 (7th Cir. 1993).

8

## III. DISCUSSION

**A.     Preliminary Issues**

Before turning to the merits, I address U.S. Bank and North American Savings Bank's contention that these appeals are not justiciable because they are moot and the debtors lack standing. For the reasons stated below, I find that these appeals are not moot and that the debtors have standing to sue on behalf of their estates.

At oral argument, the debtors' lawyers conceded that the debtors do not have standing to sue on behalf of themselves because, even if the debtors prevail, they will not receive the disgorged funds. Such funds will be returned to their estates and distributed to other creditors as additional dividends. Thus, because the debtors will not benefit from these proceedings, they lack Article III standing to sue on behalf of themselves. See, e.g., BASF AG v. Great Am. Assurance Co., 522 F.3d 813, 820-21 (7th Cir. 2008) (Article III requires that plaintiff have suffered an injury-in-fact that is particularized to him).[4]

However, the debtors did not bring these actions on behalf of themselves but on behalf of their Chapter 13 estates. The estates have suffered injuries-in-fact (namely, overpayments to the lenders) and thus they have Article III standing. Further, the estates' claims are not moot because, as explained, if the estates win they will receive the disgorged funds, at which time the estates would distribute the funds to other creditors as

---

[4]Although the debtors' lawyers conceded that the debtors do not have standing to sue on behalf of themselves, they also argued that there is a theoretical possibility that at least some of the disgorged funds might vest in the debtors personally. If this argument were correct, those debtors that might be able to collect the disgorged funds would seem to have standing to sue on behalf of themselves. However, based on counsel's concession that the debtors do not have standing to sue on their own behalf, I do not address this issue and simply assume that they do not.

9

additional dividends.  Case, 394 B.R. at 473.  This is so even though the debtors have been discharged and the trustees have completed making payments to creditors, because nothing stops the bankruptcy court from keeping the estates open for the sole purpose of receiving the disgorged funds and distributing additional dividends to creditors.  So long as it is theoretically possible for a court to grant some form of relief – and it is in the present cases –  a case is not moot for purposes of Article III.  In re Research Tech. Corp., 430 F.3d 884, 886-87 (7th Cir. 2005); In re UNR Indus., Inc., 20 F.3d 766, 768 (7th Cir. 1994).

       The lenders next contend that even though the estates might have standing, the debtors have no power to litigate claims on behalf of their estates.  Here, I note that whether the debtors have the power to sue on behalf of their estates is not in itself a question of standing in the constitutional sense.  Rather, it is a question of ordinary bankruptcy law.  An estate cannot sue unless someone makes it sue.  Whether debtors have the legal power to make their estates sue – i.e., to sue "on behalf of" their estates – is a question that turns on an interpretation of bankruptcy law, not on principles of

10

standing.[5] Thus, I turn to the question of whether bankruptcy law allows debtors to sue on behalf of their estates.

In disposing of the first appeal in these matters, Judge Stadtmueller ruled that bankruptcy law allows the debtors to seek disgorgement on behalf of their estates. Although his ruling is now law of the case, I may reconsider it if I have good reasons for doing so. See United States v. Harris, 531 F.3d 507, 513 (7th Cir. 2008). However, I see no reason to disturb his decision. Federal Rule of Bankruptcy Procedure 6009 states that either the trustee or a debtor in possession may prosecute "any action or proceeding in behalf of the estate before any tribunal." These adversary proceedings certainly qualify as "action[s] or proceeding[s]" and the federal courts are "tribunal[s]." Although the lenders contend that the debtors are no longer "debtors in possession" under Rule 6009 because they have been discharged, the code states that "[e]xcept as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the

---

[5] It is important to avoid confusing the so-called "third-party standing doctrine" with the issue of whether the debtors can sue on behalf of their estates. See, e.g., Rawoof v. Texor Petroleum Co., Inc., 521 F.3d 750, 757 (7th Cir. 2008). Third-party standing is an aspect of standing jurisprudence, although it is one of the "prudential" limitations on standing rather than a limitation required by the "case" or "controversy" requirement of Article III. Warth v.Seldin, 422 U.S. 490, 498-99 (1975). Under the third-party standing doctrine, a plaintiff who has suffered an injury-in-fact is nonetheless denied standing where his right to relief depends on his asserting the legal rights of third parties not before the court. See generally MainStreet Org. of Realtors v. Calumet City, Il., 505 F.3d 742 (7th Cir. 2007) (plaintiffs who had suffered injury-in-fact were denied standing because they sought to assert the rights of third parties). In other words, third-party standing is an issue where the plaintiff sues on his own behalf but his only avenue to relief requires that he assert the legal rights of others. In the present case, the debtors have not sued on behalf of themselves but on behalf of their Chapter 13 estates, much as a guardian ad litem might sue on behalf of a minor. Essentially, the estates are the plaintiffs in these proceedings and are asserting their own rights. The only issue is whether, under present circumstances, bankruptcy law allows a debtor to cause his or her Chapter 13 estate to litigate – an issue that does not implicate the doctrine of third-party standing.

11

estate." 11 U.S.C. § 1306(b). Here, despite completion of the plans and discharge of the debtors, the estates still have "property" – namely, the claims for disgorgement against the lenders – and thus by operation of § 1306(b), the debtors remain in possession of such property. Accordingly, Rule 6009 grants debtors the authority to litigate the present claims on behalf of their estates.[6]

**B.    Merits**

Although the debtors have the ability to litigate the present proceedings on behalf of their estates, I find that the bankruptcy court correctly determined that their disgorgement claims were barred by the principle of finality embodied in 11 U.S.C. § 1327(a).[7] Section 1327(a) provides as follows:

---

[6]Perhaps the estates' claims for disgorgement should not be deemed "property" at all, since they are claims that exist only within a bankruptcy proceeding rather than claims that a person may possess outside of bankruptcy, such as a tort claim, an action for breach of contract, or the employment discrimination claim at issue in Cable v. Ivy Tech State College, 200 F.3d 467 (7th Cir. 1999). Usually, when we think of a "claim" (or "chose in action") that is "property" of a bankruptcy estate, we mean a right to sue that the debtor possesses by reason of laws other than the bankruptcy code. But I see no reason to draw a distinction between legal claims based on bankruptcy law and those based on non-bankruptcy law. It makes no difference to the estate (or the creditors who benefit from the estate) what law gives rise to the claim. Either way, if the estate wins the claim, it (and the creditors) will receive money. Thus, as a practical matter, any legal claim that has the potential to increase the value of the estate should be considered "property" of the estate.

[7]The parties have used the term "res judicata" to describe the grounds on which the bankruptcy court granted the lenders' motions to dismiss. While such usage may be correct, I prefer to avoid using "res judicata" because I believe that it engenders some confusion. The term "res judicata," or claim preclusion, usually connotes the common-law doctrine holding that a subsequent suit is barred if the claim on which it is based arises from the same transaction or occurrence as a prior suit that has resulted in a final judgment. See, e.g., Okoro v. Bohman, 164 F.3d 1059, 1063 (7th Cir. 1999). The bankruptcy court did not apply this common-law doctrine; rather, it held that by operation of 11 U.S.C. § 1327(a), the orders confirming the Chapter 13 plans precluded the debtors from pursuing their disgorgement claims. In other words, the court held that the orders confirming the plans have something of a res judicata effect, but the court did not apply the

12

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

Citing this provision, the Seventh Circuit has held that "[i]t is a well-established principle of bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan." In re Harvey, 213 F.3d 318, 321 (7th Cir, 2000). The court explained:

> The reason for this is simple and mirrors the general justification for res judicata principles – after the affected parties have an opportunity to present their arguments and claims, it is cumbersome and inefficient to allow those same parties to revisit or recharacterize the identical problems in a subsequent proceeding.
>
> This is especially true in the bankruptcy context, where a confirmed plan acts more or less like a court-approved contract or consent decree that binds both the debtor and all the creditors. Bringing the various creditors' interests to the table once is difficult enough; permitting one of the creditors to launch a later attack on a confirmed plan would destroy the balance of interests created in the initial proceedings.

Id.

In the present case, the bankruptcy court found that § 1327(a) precluded the debtors' claims because it was the debtors who proposed to pay the now-disputed interest. The court reasoned that, having made this proposal, the debtors could not, years later, upset the repose created by the confirmed plans. Otherwise, "the integrity of the entire judicial process [would be undermined]." Case, 394 B.R. at 476.

On appeal, the debtors argue that the bankruptcy code creates no deadline for filing objections to a proof of claim, and that therefore they can still object to the lenders' claims.

---

common-law doctrine that goes by the name "res judicata." See Case, 394 B.R. at 478.

13

This argument is correct in part – the bankruptcy code does not set any explicit deadline for filing objections to a proof of claim. As Judge Stadtmueller recognized, Federal Rule of Bankruptcy Procedure 3007, which governs objections, does not say by when such an objection must be filed. Herrera, 369 B.R. at 399. Likewise, the Seventh Circuit has recognized that no statute or rule requires an objection to precede confirmation. In re Hovis, 356 F.3d 820, 822 (7th Cir. 2004). Often, bankruptcy courts will, by either local rule or court order, set deadlines for filing objections, Hovis, 356 F.3d at 822, but that was not done in the present proceedings, Herrera, 369 B.R. at 400 (finding that the bankruptcy court set no deadlines for filing objections to claims). To be sure, the trustee in each underlying case set a deadline for filing objections, but the court itself did not do so, and the Federal Rules of Bankruptcy Procedure do not say that objections are barred if they are not filed within a time-period set by the trustee. Herrera, 369 B.R. at 400. So the debtors are correct to say that the bankruptcy code sets no deadline for filing objections.

The problem with the debtors' argument is that just because the bankruptcy code sets no hard-and-fast deadline for filing objections does not mean that an objection can never be deemed untimely. Once a plan is confirmed and a party in interest has had a reasonable opportunity to raise objections, a strong presumption of finality attaches to the order confirming the plan. Harvey, 213 F.3d at 322 (recognizing the importance of "the bankruptcy principle of repose"); In re Chappell, 984 F.2d 775, 782-83 (7th Cir.1993) (noting that § 1327(a) binds those who had opportunity to object unless there is good reason for failure to object, such as presence of scheme to trick or mislead); see also Adair v. Sherman, 230 F.3d 890, 895 (7th Cir. 2000) (recognizing "the finality that bankruptcy confirmation is intended to provide"). Although this presumption of finality is not absolute,

14

a party seeking to undo a confirmed plan must have good reasons for doing so – reasons that outweigh the interest in finality. Good reasons are things like redressing fraud or other culpable conduct, correcting a failure to afford an interested party due process, or addressing an unexpected problem that arises during the life of the plan. See Case, 394 B.R. at 476 (collecting cases and summarizing exceptions to rule that order confirming plan is final).

Analogous cases decided under Chapter 11 also recognize the finality of confirmed plans and the judicial reluctance to disturb them without good reason. In Holstein v. Brill, 987 F.2d 1268, 1270 (7th Cir. 1993), the court explained that confirmation is "equivalent to a final judgment in ordinary civil litigation," and that post-confirmation changes "should be allowed only for compelling reasons." The court recognized that "late-breaking claims . . . assuredly disrupt the orderly process of adjudication." Id. at 1271. And in UNR Industries, the Seventh Circuit reiterated that a confirmed and implemented plan "should be disturbed only for compelling reasons." 20 F.3d at 769.

In the present case, the debtors have not identified a good reason for undoing their confirmed plans at this late date. As noted, the debtors could have addressed the issue of interest on mortgage arrears prior to confirmation by not affirmatively proposing to make the now-disputed interest payments.[8] Even if there were some reason that prevented

---

[8]Indeed, by proposing to make the very payments to which they now object, debtors may be judicially estopped from pursuing their objection. However, the bankruptcy court found that judicial estoppel did not apply, Case, 394 B.R. at 474, and because I can affirm on other grounds, I do not reach this issue.

15

debtors from catching the issue prior to proposing their plans,[9] they had a second opportunity to raise it when the lenders filed their proofs of claim and supporting documentation. However, the debtors failed to raise their objection until <u>years</u> after the plans were confirmed and the proofs of claim were filed. Again, although I agree with debtors that the bankruptcy code sets no hard-and-fast deadline for filing objections, the lack of such a deadline is not a license to sit on one's rights for years while other parties go about their business in reliance on the plan as confirmed. To justify a delay of several years, the debtors would need an extraordinary reason. But again, debtors have offered none, stating only that they made a mistake and now want to correct it.[10] However, "[a] litigant's inattention, laziness, [or] error . . . is not good cause by any standard." <u>Holstein</u>, 987 F.2d at 1271. For these reasons, the debtors have forfeited their right to contest the lenders' claims.[11]

---

[9]The debtors state that Chapter 13 plans are "hastily assembled" and that therefore debtors' lawyers are likely to overlook potential arguments before proposing a plan. (Reply Br. at 2.)

[10]I held oral argument on these appeals in an effort to determine whether anything other than the debtors' own mistake interfered with their ability to raise their argument in a timely fashion. No other explanation was offered.

[11]Although the bankruptcy court found that the debtors had not waived their objection because they did not "intentionally relinquish a known right," <u>Case</u>, 394 B.R. at 474, this does not mean that the debtors have not forfeited their objection. Forfeiture is the failure to timely assert a right. <u>See, e.g.</u>, <u>United States v. Farmer</u>, 543 F.3d 363, 371 (7th Cir. 2008). Although waiver requires a finding of intent, forfeiture requires only a finding of neglect. <u>United States v. Garrett</u>, 528 F.3d 525, 527 (7th Cir. 2008). Here, the debtors' unexplained, multi-year delay certainly evidences neglect. In any event, although I use the word "forfeited" to describe the debtors' actions, I note that I am not applying any separate doctrine of forfeiture, but rather the principle of finality embodied in § 1327(a), which when applied in the present cases resembles forfeiture.

Moreover, even if the debtors had a good reason for their own delay, there is simply nothing to be gained by reopening the plans at this late date. The creditors who would receive the disgorged funds if the debtors prevail have shown no interest in these proceedings and are apparently satisfied with what they have already collected under the plans. The debtors themselves are likely to receive nothing even if they prevail. And although it is possible that not reopening the plans would leave the lenders with a windfall, preventing such a windfall is not a good reason to override finality. The time to prevent the windfall was when the plans were confirmed, or within a reasonable time after the lenders filed their proofs of claim. Now that such time has long passed, the interests of justice are best served by leaving the plans intact.

I note that the bankruptcy court rejected the lenders' laches defense on the ground that the lenders were not unduly prejudiced by the debtors' lengthy delay. Case, 394 B.R. at 475. The debtors might argue that because the lenders have not suffered prejudice from this delay, the debtors' failure to object earlier was harmless. However, unlike laches, the principle of finality embodied in § 1327(a) and recognized in the case law protects not only opposing parties, but also the judiciary itself. Courts have their own interest in the finality of their orders and in ensuring that judicial resources are not spent on issues that were not raised at the appropriate time. See, e.g., Greenlaw v. United States, __ U.S. __, 128 S. Ct. 2559, 2569 (2008) (noting that the legal system, and not just the parties, have an interest in finality). It would be a waste of judicial resources to force the bankruptcy court to reopen these seven bankruptcies for the sole purpose of addressing objections that the debtors had every opportunity to raise before or shortly after confirmation.

17

The debtors' final argument is that, pursuant to the rationale of the Seventh Circuit's decision in In re Escobedo, they cannot be precluded from raising their objections at this time because the orders confirming their plans are "nugatory" and therefore lack preclusive effect. 28 F.3d 34, 35 (7th Cir. 1994). In Escobedo, a debtor had completed making payments under her confirmed Chapter 13 plan and sought a discharge. Prior to discharge, the trustee moved to dismiss the entire plan on the ground that it did not satisfy 11 U.S.C. § 1322(a)(2),[12] a provision that the Seventh Circuit described as a "mandatory" provision of the bankruptcy code. Id. The bankruptcy court dismissed the plan, and the Seventh Circuit affirmed. The Seventh Circuit reasoned that because the plan did not comply with a mandatory provision of the code, the bankruptcy court's order confirming the plan was "nugatory and properly dismissed." Id. The court added that because the confirmation order was nugatory, it had no res judicata effect on a tardy claim, even though the claimant did not raise the claim until years after the plan was confirmed and the debtor had completed making payments in accordance with the plan. Id.

The debtors argue that, like § 1322(a)(2), the code provision on which they rely, § 1322(e), is mandatory, and that because their plans do not comply with § 1322(e), the orders confirming them are nugatory and lack preclusive effect. The bankruptcy court concluded that § 1322(e) is not mandatory and that therefore § 1327(a) still binds the debtors. Case, 394 B.R. at 477. I do not reach the issue of whether § 1322(e) is mandatory because I conclude that, even if it is mandatory, the plans under review comply with it.

---

[12]Section 1322(a)(2) requires full payment of priority claims unless the holder of such a claim agrees to different treatment.

18

Section 1322(e) states that "if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." In their plans, the debtors proposed to cure mortgage defaults. According to them, it was not "necessary" to pay interest on mortgage arrears to cure their defaults because "the underlying agreement and applicable nonbankruptcy law" did not require that they do so. Assuming for purposes of these motions to dismiss that debtors are correct and that their underlying agreements and nonbankruptcy law did not require the payment of such interest, the plans nonetheless comply with § 1322(e). This is so because nothing in § 1322(e) forbids a bankruptcy court from confirming a plan in which the debtor proposes to pay more than what is "necessary" to cure a default. As the bankruptcy court stated, "[t]here is nothing illegal about parties agreeing to pay more than what is required under the § 1322(e) formula." Case, 394 B.R. at 478. Here, the debtors proposed to pay the disputed interest even though, as they now claim, the bankruptcy code did not require them to do so. Because nothing in § 1322(e) prevents the bankruptcy court from holding the debtors to their own proposals, I conclude that the confirmed plans do not violate § 1322(e), that § 1327(a) still applies, and that the debtors are bound by their plans.

19

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the orders of the bankruptcy court are **AFFIRMED**.

Dated at Milwaukee, Wisconsin, this 23 day of December, 2008.

/s_____
LYNN ADELMAN
District Judge